IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW FULLMAN,<br>**Plaintiff,**<br><br>v.<br><br>CITY OF PHILADELPHIA, *et al.*,<br>**Defendants.** | CIVIL ACTION<br><br><br><br><br>NO. 24-CV-969 |

**MEMORANDUM OPINION**

Plaintiff Andrew Fullman, proceeding *pro se*, brings this civil rights action against the City of Philadelphia ("the City") and several officials (all in their individual capacities). The City and the Individual Defendants, Police Officer Johnnie Mae Carter #1305,[1] Assistant District Attorney Barbara McDermott, and Police Officer William Dorney move, pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), to dismiss portions of Fullman's Third Amended Complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, the Motion will be granted in part and denied in part.

I. **PRELIMINARY MATTERS**

Before proceeding to the facts of this matter, some housekeeping: This matter has been before the Court for some time. Plaintiff filed his Complaint in December 2023 in the Philadelphia Court of Common Pleas, from which it was removed and this Court accepted jurisdiction pursuant to 28 U.S.C. § 1331. He then filed an Amended Complaint in May 2024 and a Second Amended Complaint in June of that same year. In ruling on the Defendants'

---

[1] On June 25, 2024, counsel for the Defendants filed a Suggestion of Death that Carter is deceased. ECF No. 51. Her estate has not been substituted as a defendant. Accordingly, the claims against her shall also be dismissed with prejudice for the reasons given in the January 30, 2025 Memorandum Opinion. *See U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) ("[A] district court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint but chose not to resolve them.").

1

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) that version of the Complaint—the Second Amended Complaint—the Court dismissed with prejudice all claims under Section 1983 against Assistant District Attorney Barbara McDermott related to her alleged failure to disclose exculpatory evidence and use of false or perjured testimony; as well as his state law claims for negligent supervision, *respondeat superior* liability, intentional infliction of emotional distress, and negligent infliction of emotional distress against the City of Philadelphia. It also dismissed without prejudice all of Fullman's claims against Officer Johnnie Mae Carter; his malicious prosecution claim under the Fourth Amendment against Officer William Dorney; and, his claim brought under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) against the City of Philadelphia regarding municipal policies and customs.

In his Third Amended Complaint (ECF 122), which was filed in February 2025 and which is the subject of this Motion to Dismiss, Fullman readily acknowledges that he added no allegations, simply substituting the names of two people who he had previously denominated as "John Does".[2] In that Fullman could have included facts in his Third Amended Complaint designed to address the deficiencies in the claims of his Second Amended Complaint that had been dismissed without prejudice, but chose not to, all the reasons for dismissal given in the January 30, 2025, Memorandum Opinion (ECF No. 115), are adopted and incorporated into this present opinion. *Fullman v. City of Philadelphia*, 2025 WL 343691 (E.D. Pa. Jan. 30, 2025). Further, all claims previously dismissed without prejudice in the January 30, 2025, Order, shall now be dismissed <u>with</u> prejudice. *U.S. ex rel. Schumann*, 769 F.3d at 849 ("[A] district court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the

---

[2] One of them was Captain Robert McKeever but, subsequently, Fullman asked the Court to dismiss him from the matter, which it did. ECF No. 142. The other was Captain David Morrell, who has yet to be served with any of the versions of Fullman's complaints.

deficiencies in his complaint but chose not to resolve them."); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) ("Repeated failures to cure the [complaint's] deficiency by amendments previously allowed" may justify dismissal with prejudice); *see also Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 73-4 (3d Cir. 1994) ("[T]hree attempts at a proper pleading is enough[.]"). *See also Valentin v. Dep't of Labor & Indus.*, 2025 WL 830441 (3d Cir. Mar. 17 2025), *cert. denied*, 2025 WL 3507032 (U.S. Dec. 8, 2025)) (affirming dismissal with prejudice where, after a motion to dismiss, *pro se* plaintiff "had the opportunity to address the pleading deficiencies in his amended complaint, and any further amendment would be futile.").

With that, the Court turns to the only remaining claims[3] in Fullman's Third Amended Complaint which are addressed in this Motion to Dismiss: state law claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") against Dorney and McDermott.[4]

---

[3] Although Fullman includes in his Third Amended Complaint a count that he labels as "Respondeat Superior"— alleging that "[i]n committing the acts set forth in the preceding paragraphs the Defendants were members and agents of the Philadelphia Police Department," were "acting . . . within the scope of their employment," and that the City is "liable" for all state law torts committed by their agents"— *respondeat superior* is not itself a self-standing claim. Rather, it is a form of vicarious liability in which an employer is held responsible for the tortious conduct of their employee. *See Yorston v. Pennell*, 153 A.2d 255, 259-60 (Pa. 1959) (examining which factors and relationships make an employer vicariously responsible for the conduct of their employees); *Sutherland v. Monongahela Valley Hosp.*, 856 A.2d 55, 62 (Pa. Super. 2004) ("Vicarious liability is not a cause of action; it is a mechanism to impose liability on an employer for the acts of an employee within the scope of employment."). Accordingly, it is not appropriately handled under a Motion to Dismiss, which deals with the viability of *claims*, and will not be addressed here. Fed. R. Civ. P. 12(b)(6); *see also Pa. v. Brown*, 260 F. Supp. 323 (E.D. Pa. 1966) ("The primary function of a motion to dismiss is to screen claims for insufficiency").

[4] Defendants' Motion does not raise any argument regarding the following claims each of which Plaintiff brings under 42 U.S.C. § 1983 ("Section 1983"). For Dorney, these include: (1) violation of Due Process under the Fourteenth Amendment; (2) fabrication of false evidence under the Fourth and Fourteenth Amendments; (3) supervisory liability; (4) failure to intervene; (5) conspiracy to deprive Fullman of constitutional rights; and, (6) malicious prosecution under the Fourteenth Amendment. For McDermott, Section 1983 claims remain in relation to her involvement in the police investigation. To the extent her actions fall under this umbrella, Fullman's claims for: (1) Due Process violations under the Fourteenth Amendment; (2) fabrication of false evidence under the Fourth and Fourteenth Amendments; (3) supervisory liability; (4) failure to intervene; (5) conspiracy to deprive of constitutional rights; and, (6) malicious prosecution, they remain live. Finally, against the City, Fullman's *Monell* claim for single-incident liability endures.

## II.   FACTS ALLEGED

The description of what happened to Plaintiff here as set forth herein is found in the allegations of the Third Amended Complaint in that they are taken as true on this motion to dismiss. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). On October 4, 1986, Carter responded to a report of a disturbance on Cobbs Creek Parkway in Philadelphia that involved Fullman and another individual, Bruce Beatty. At the scene, Beatty initially informed Carter "that he began striking Fullman's car with a baseball bat" and, in response, Fullman "displayed a silver handgun." Although no one was arrested immediately thereafter, Defendant Dorney began an investigation, during which he took statements from Fullman, Beatty, and others. While Fullman steadfastly maintained his innocence, Beatty accused Fullman of firing the silver handgun during their altercation. Following these interviews, Dorney drafted reports documenting the various statements made by the witnesses, which, reportedly "definitively identified Mr. Fullman as the shooter." According to Fullman, Dorney also directed Carter to fabricate evidence—specifically, that Carter observed a "fresh" bullet mark at the crime scene— to corroborate Beatty's statements about Fullman firing the silver handgun. Fullman avers that "[a]ccording to Defendant Dorney, the case he built against [me] depended entirely on Defendant Carter's false and fabricated claim of observing an alleged 'fresh' bullet mark" at the crime scene.

Dorney eventually filed an Affidavit of Probable Cause, leading to Fullman's arrest on November 8, 1986, over a month after the incident. At the Preliminary Hearing, Beatty took the stand and testified that he saw a bullet mark on the sidewalk of the crime scene following the incident. Fullman alleges that Dorney had a brief change of heart shortly thereafter, telling Fullman "that he [Dorney] was going to talk to the prosecutor" overseeing the trial and tell that

individual "he did not believe Mr. Fullman fired a shot" during the altercation with Beatty. Dorney reneged on his offer, however, allegedly because Carter—"alleged[ly a] friend of the Beatty family"—"conspired and pressured" other officers "to have Mr. Fullman arrested two additional times on fabricated gun charges" in an effort "to portray him . . . as a dangerous person." Although the Philadelphia Municipal Court eventually dismissed those other two "fabricated gun charges," the charges related to the Cobbs Creek Parkway incident were sustained, and Fullman began preparing for trial.

In the ensuing months, Dorney allegedly instructed Carter to fabricate evidence and provide false testimony against Fullman. For instance, several days before Fullman's trial was scheduled to commence, Dorney allegedly attempted to find an additional witness to falsely testify about the location of Fullman's car in the days following the incident. McDermott, one of the prosecutors overseeing Fullman's case, "took matters into her own hands" and "join[ed] the police investigation in search of" such a witness from "the Philadelphia Ugly Duckling Car Rental," from where they believed Fullman had rented the car. Fullman avers that McDermott further supported the investigation by finding a law enforcement witness "with ballistics expertise" to "provide [a] fabricated scientific theory" regarding the bullet mark that Carter claimed to have found at the crime scene.

When Fullman's trial eventually started in June 1987, Fullman alleges that Carter provided false testimony, stating that she observed a "fresh" bullet mark on the street at the crime scene. She told the jury that she was able to characterize the bullet in such a way based on her experience having identified "hundreds" of similar bullet marks during her training at the Philadelphia Police Academy. Fullman avers that McDermott was aware that this testimony was false but nonetheless presented it to the jury. Beatty also took the stand, and, in contrast to his

5

testimony at the Preliminary Hearing—where he testified that he observed a bullet mark on the *sidewalk* of the crime scene following the incident—claimed that he saw the bullet mark on the *street* in an effort "to corroborate his story" with that of Carter.  Ultimately, Fullman was convicted and "spent over five and a half years in prison and an additional four and a half years" on parole.

At some point while Fullman was on parole, he ran into Beatty's wife, Barbara, at a local Popeyes restaurant.  She told him that "prior to and after his criminal trial" both she and her husband repeatedly "insisted to the Defendant Officers and McDermott" that Fullman "never fired a gun" and only "displayed a silver handgun."  Yet, Carter and Dorney "failed to document" any of these interactions or exculpatory statements in the numerous reports they produced.  Furthermore, neither the two officers nor McDermott ever disclosed this information to the defense or trial court at any point during the investigation or subsequent proceedings against Fullman.

Fullman also came to learn that "the problems that Defendants Dorney and Carter had as . . . investigators, many of which were on full display" during prior investigations, "were common knowledge at the Philadelphia Police Department" and its "most senior leadership."  To that end, Fullman alleges that Officer Carter "was forced to resign from the [Department]" in 1988 due to her "false ballistics" testimony at his trial.  Prior to her discharge, Officer Carter "reportedly admitted" to the Philadelphia Police Department that she pressured Beatty to provide false testimony against Fullman, instructing Beatty to: (1) "deny having a baseball bat and attacking Mr. Fullman on October 4, 1986, so Mr. Fullman would be arrested instead of Mr. Beatty even though Mr. Beatty admitted to striking Mr. Fullman's rental car with a baseball bat"; and, (2) change his testimony about where he observed the "fresh" bullet mark to bolster her

testimony (*i.e.*, from the sidewalk to the street).

Fullman worked for several years to compile additional evidence to clear his name and to undercut what he believes was spurious testimony offered by the government.[5] Fullman eventually filed a petition for an actual innocence pardon with the Commonwealth of Pennsylvania. Following "a review of the evidence, the Pennsylvania Pardon and Parole Board ultimately recommended to" then-Governor Tom Wolf that "Fullman be granted a full pardon." Governor Wolf then granted the petition on the basis that: "(1) Mr. Fullman did not commit the crime for which he was charged; (2) a police officer (Keenan Morris) who attended the same Philadelphia Police Academy had given a sworn affidavit that there are no bullet marks at the Philadelphia Police Academy's shooting range as falsely testified by Defendant Carter; (3) Defendant Carter was discharged from the Philadelphia Police Department and had no ballistic training; and, (4) the state's witness changed his testimony three times."

### III.    LEGAL STANDARD

Turning now to the analysis of his claims: to survive a motion to dismiss brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

---

[5] For instance, Fullman references affidavits that he obtained from two individuals—Lieutenant Edward Egenlauf and Retired Officer Keenan Morris—regarding the structure of the shooting range at the Philadelphia Police Academy, both of which contradict Officer Carter's trial testimony that she had previously identified "hundreds" of "fresh" bullet marks while training at the Academy.

When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id*. at 210-11 (citation omitted). In so doing, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

As Fullman is proceeding *pro se*, his allegations must be construed liberally at this stage. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The "relevant legal principle" therefore will be applied "even when the complaint has failed to name it." *Id*. "Missing details or superfluous material" similarly do not render a *pro se* complaint "unintelligible." *Garrett v. Wexford Health*, 938 F.3d 69, 93-94 (3d Cir. 2019). Indeed, even if it is "vague, repetitious, or contains extraneous information," a *pro se* complaint's language will ordinarily be "plain" in satisfaction of Rule 8 "if it presents cognizable legal claims to which a defendant can respond on the merits." *Id*. (citations omitted).

IV. **ANALYSIS**

A. **Claims based on Negligence Against Dorney and McDermott**

Defendants Dorney and McDermott argue that Fullman's claim against them for negligent infliction of emotional distress ("NIED") must be dismissed because they are immune under the Political Subdivision Tort Claims Act ("PSTCA"), which provides that an "employee of a local agency is liable . . . only to the same extent as [their] employing agency[.]" 42 Pa. C.S.

§ 8545. Section 8542 of the PSTCA, 42 Pa. C.S. § 8542, in turn, provides that local agencies and their employees are only liable for injuries under certain specific conditions.

First, plaintiffs must show there exists a common law or statutory cause of action for similar injuries against an entity not possessing PSTCA immunity. 42 Pa. C.S. § 8542(a); *West ex rel. S.W., an Incapacitated Person v. Pitts. Pub. Sch.*, 327 A.3d 340, 344 (Pa. Commw. 2024). There does exist such a right of recovery for NIED, so this requirement is met. *Armstrong v. Paoli Memorial Hosp.*, 633 A2d 605, 608 (Pa. Super. 1993) (adjudicating an NIED case as a negligence claim against a private entity).

Second, the alleged injury must be caused "by the negligent acts of the local agency or an employee thereof acting within the scope of [their] office or duties." 42 Pa. C.S. § 8542(a)(2). Here, Fullman argues, and the City does not contest, that Dorney and McDermott were acting within the scope of their duties, and that Fullman's injuries were caused by their allegedly negligent actions. Thus, this requirement is met as well.

Finally, a plaintiff must demonstrate that the alleged negligent acts fell into one of the exceptions to immunity enumerated in Section 8542(b). Of these nine exceptions, only one, sexual abuse, has any potential application here. This exception allows claims to proceed if the plaintiff suffered sexual abuse as a result of "actions or omissions of the local agency which constitute negligence." 42 Pa. C.S. § 8542(b)(9). While Fullman' original Complaint did allege that Defendants' negligent conduct led to his being sexually assaulted while incarcerated, those allegations are not included in his Third Amended Complaint, which contains nothing at all to suggest that Dorney or McDermott were engaged in, or the cause of, sexual abuse of any kind, either directly or through negligent conduct. Absent such allegations, there is nothing to support that the 8542(b)(9) exception applies. *New Rock Asset Partners, L.P. v. Preferred Entity*

*Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996) (holding that "the amended complaint supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading"); *Reichert v. TRW, Inc., Cutting Tools Div.*, 611 A.2d 193, 198-99 (Pa. 1992) (finding that an amended complaint is "the operative complaint . . . the filing of which constitutes virtually a withdrawal of the [original][.]" (cleaned up)). Thus, Fullman's NIED against claim Dorney and McDermott shall be dismissed without prejudice.

### B.  Claims based on Intentional Torts Against Dorney and McDermott

Dorney and McDermott also argue that they are immune under the PSTCA for Fullman's intentional infliction of emotional distress ("IIED") claim.  Like negligence-based claims, an employee of a local agency is liable "only to the same extent as [their] employing local agency." 42 Pa. C. S. § 8545.  Section 8550 of the PSTCA provides that:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted . . . willful misconduct, the provisions of section[] 8545 (relating to official liability generally) . . . shall not apply.

18 Pa. C.S.A. § 8550.  In short, "[u]nder the PSTCA, public employees sued in their personal capacity do not enjoy immunity for . . . willful conduct." *Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp.2d 238, 277 (E.D. Pa. 2007).  Thus, PSTCA immunity is lost if, first, the plaintiff adequately pleads an intentional tort.  *See Lancie v. Giles*, 572 A.2d 827, 830 (Pa. Commw. 1990) (holding that an IIED claim, as an intentional tort, stripped a government official of immunity).  Second, that the employee was acting within the scope of their employment.  *See Balleta v. Spadoni*, 47 A.3d 183, 195-96 (Pa. Commw. 2012) (holding that for actions within the scope of their duties, a deputy sheriff and assistant solicitor possessed presumptive PSTCA immunity).  And, finally, that the allegations are sufficient to show willful misconduct. 42 Pa. C.

10

S. § 8550; *Balleta*, 47 A.3d at 196 (holding that "if the alleged wrongful conduct constitutes willful misconduct within the meaning of 42 Pa. C. S. § 8550[,]" local agency employees lose PSTCA immunity). The parties here do not dispute that IIED is an intentional tort. Neither do Dorney or McDermott contend that they were operating outside the scope of their employment. They both, however, maintain that their actions—as described in the Third Amended Complaint—do not constitute "willful misconduct."

          a. <u>ADA McDermott is Not Immune from Suit on Fullman's IIED Claim</u>

"Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (cleaned up) (quoting *Renk v. City of Pittsburgh,* 641 A.2d 289, 293 (Pa. 1994) (citations omitted)). In other words, "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" *Id.*

Fullman, in his Third Amended Complaint, alleges that: McDermott knew that the Beattys had recanted their statements that Fullman fired a handgun; that Mr. Beatty had changed his account of the incident at least twice; and, that McDermott failed to disclose this information to him, or his counsel, before, during, or after trial. Indeed, Fullman claims he only found out because of a chance meeting with Barbara Beatty in a Popeyes restaurant. As pleaded, McDermott would have known ahead of trial that Bruce Beatty had offered at least two conflicting statements regarding the location of the bullet mark, and that both Beattys insisted Fullman never fired a gun. However, for unclear reasons, McDermott never disclosed this information to the defense before, during, or after the trial.[6] All this plausibly alleges that

---

[6] Failing to disclose exculpatory information is a longstanding violation of due process under *Brady v. Maryland*,

11

McDermott engaged in "willful misconduct" and, thus, is not immune under the PSTCA. The Motion shall accordingly be denied with respect to Fullman's IIED claim against her.

                b.    Officer Dorney Is Not Immune from Suit on Fullman's IIED Claim

With respect to police officers "willful misconduct" is shown when the plaintiff sufficiently alleges "not only that the Officers intended to commit the acts that they are accused of carrying out, but also that the Officers understood that the actions that they intended to take were unlawful and then chose to take those actions anyway." *York v. Kanan*, 298 A.3d 533, 539-40 (Pa. Commw. 2023); *see also Renk*, 641 A.2d at 293-94.

Here, Fullman's has done just that. Specifically, he alleges that by directing Carter to fabricate evidence against him and coercing Beatty to falsely testify at trial, Dorney "caused Mr. Fullman, an innocent man, to be falsely arrested, maliciously prosecuted, and wrongly imprisoned." Fullman further alleges that Dorney coerced Barbara and Bruce Beatty into falsely testifying that he fired a gun at Bruce Beatty, when no gun was ever fired. Dorney also allegedly browbeat Bruce Beatty into a recollection that the location of the ricochet mark was in compliance with the police's preferred narrative; directed Carter to fabricate evidence of a fresh "bullet mark" at the scene; and, knowingly filed police reports predicated on the false and fabricated evidence.[7] Accordingly, reading the allegations in the light most favorable to

---

373 U.S. 83 (1963), and can constitute prosecutorial misconduct. *See, e.g.*, *Commonwealth v. Smith*, 615 A.2d 321, 322-23 (Pa. 1992) (ruling that prosecutor's awareness of important exculpatory evidence and deliberate failure to disclose it to the defense constituted serious prosecutorial misconduct); *Commonwealth v. Moose*, 602 A.2d 1265, 231-35, 240 n.12 (Pa. 1992) (finding that a prosecutor's numerous, serious *Brady* violations warranted both a new trial and referral to the Bar Association's Disciplinary Board); *Commonwealth v. Lynn*, 192 A.3d 194, 199-201 (Pa. Super. 2018) (assessing whether a prosecutor's *Brady* violation was intentional misconduct or a lower level of culpability in order to determine what sanction was appropriate).

[7] In Pennsylvania, coercing false testimony and falsifying evidence are both crimes. 18 Pa. C.S. § 4902 (perjury) (effective June 6, 1972); § 4910 (tampering with or fabricating physical evidence) (effective June 6, 1973); § 4952 (intimidation of witnesses or victims) (effective December 4, 1980). Accordingly, assuming the allegations against him are taken as true—which they must be at this stage—Dorney was on notice that his actions were unlawful. *Cf. U.S. v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009) (noting that a criminal statute provides constitutionally required

Fullman, they plausibly state that Dorney intended to commit the acts that he is accused of carrying out, and also that he understood that the actions that he intended to take were unlawful and then chose to take those actions anyway.

  An appropriate order follows.

                **BY THE COURT:**

                **S/ WENDY BEETLESTONE**
                _____
                **WENDY BEETLESTONE, C.J.**

---

notice if it gives "fair warning that certain conduct is prohibited.") (internal quotations omitted).